# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AARON SLOAN, | ) | Case No. 3:13-cv-104 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID PITKINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Pending before the Court in this prisoner civil-rights case is defendants' motion to dismiss for failure to prosecute (ECF No. 87). Defendants' motion is based on plaintiff Aaron Sloan's alleged improper conduct during the December 1, 2016 telephonic pretrial conference in this case. That telephonic pretrial conference was cut short when Sloan's call was disconnected following an audible commotion from his end of the call. A prison employee later explained that the call was disconnected—and that Sloan was escorted back to his cell—because he had exposed his penis and begun masturbating in front of the employee while he was on the phone. Sloan denies that he did this, and claimed in the resulting prison disciplinary process that these allegations are "part of a conspiracy and retaliatory in nature." (ECF No. 89-2.)

This is a sordid situation. After weighing the factors for dismissal for failure to prosecute, and because the Court credits the prison employee's explanation of what occurred during the telephonic pretrial conference, the Court concludes that defendants' motion to dismiss should be granted. This case will therefore be dismissed with prejudice.

**I.      Background**

On May 16, 2013, Sloan filed this civil-rights case against several correctional officers at SCI Somerset and employees of the Pennsylvania Department of Corrections ("DOC"). (*See* ECF No. 1.) Sloan's claims arise from an alleged incident of excessive force on July 15, 2010, at SCI Somerset. Over the course of this case, a number of defendants and claims were dismissed as a result of defendants' motions to dismiss and for summary judgment, and the Court eventually scheduled trial for January 2017 (*see* ECF No. 82).

On December 1, 2016, this Court unsuccessfully attempted to hold the pretrial conference in this case by telephone. The reason the pretrial conference was unsuccessful is because the plaintiff—Aaron Sloan, who is now incarcerated at SCI Greene and represents himself—was disconnected from the line by the prison. (*See* ECF Nos. 86, 91 at 6:22-9:17.[1]) Initially, when the Court got on the line, defendants' counsel was the only person on the call. (ECF Nos. 86, 91 at 2:4-22.) Defendants' counsel then stated that Sloan had been on the call but that someone in the background on his end had said "[h]e's being inappropriate. We have to end the call," and that the call had then ended. (*See* ECF No. 91 at 2:4-9.) Defendants' counsel then stated that she would call the prison back to get an explanation of what had occurred. (*Id* at 2.)

A few minutes later, defendants' counsel called the Court back with Sloan on the line. No explanation was given for the interruption, and the Court again attempted to hold the pretrial conference. A minute or so into the conference, however, a commotion could be heard from— what appeared to be—Sloan's end of the line, and Sloan stated that he was being told to end the

---

[1] ECF No. 86 is the Court's conference memo of the attempted pretrial conference and ECF No. 91 is the official transcript of that conference. These documents explain the sequence of events during the pretrial conference and recite the prison employee's statements in more detail.

call. (*See id.* at 4:23-6:2.) Defendants' counsel asked to speak to someone at the prison but eventually the call ended without explanation or response. Defendants' counsel then stated that she would call the prison back again and then call the Court with an explanation.

Approximately ten minutes later, defendants' counsel called back. This time she had a prison employee on the line. (*See id.* at 6:22-25.) The prison employee told the Court that she had been present for the first call (this, it seems, was before the Court got on the line), and had been separated from Sloan by a glass barrier and cage with a small opening. (*Id.* at 7:6-8:11.) The employee stated that she had placed the call on speaker phone after defendants' counsel called in the first time, and that—while they were waiting for the call to connect (presumably while they were waiting for the Court to get on the line)—she "noticed [Sloan's] hand moving, and [she] looked down and he had his penis all the way out and he was jacking off . . . ." (*Id.* at 7:8-10.) The employee stated further that she "[didn't] want to be too graphic with it, but he was masturbating. I mean that's just inappropriate so." (*Id.* at 7:12-13.) She explained that she had then said "[h]e's being inappropriate so I'm going to end the phone call," and had ended the call and left the room to get correctional officers to escort Sloan back to his cell. (*Id.* at 7:14-16, 8:17-18.)

At this point defendants' counsel explained that, after Sloan's call disconnected the first time, she had called the number back and that the prison receptionist connected counsel back to the conference room. Defendants' counsel said that Sloan had picked up—which is when counsel called the Court back and the second call with the Court began. (*See id.* at 7:17-23.) Defendants' counsel asked the employee whether that second call should have occurred, and she explained as follows:

> [PRISON EMPLOYEE]: No, I mean the reason why the operator put you back through is because I'm in a different part of the prison. So she probably just thought we got disconnected and was trying to connect you guys again. I had left the room. There's glass and a cage separating us. I'm really surprised he was even able to get his hand through there to answer the phone, because it wasn't that close.
> 
> I'm not sure how he was even able to do that. But there's a little slit there so that you can hear. He was probably able to get his hand through to at least push the button to put it back on speaker, I would assume.
> 
> [DEFENDANTS' COUNSEL]: Okay. And then you --
> 
> [PRISON EMPLOYEE]: But I wasn't in the room at that time, so yeah, the officers were probably trying to extract him out.

(*Id.* at 8:1-15.)

Defendants subsequently filed the motion to dismiss before the Court (ECF No. 87). Defendants attached several DOC disciplinary records for Sloan as exhibits to their motion. (*See* ECF No. 87-2.) These records establish that Sloan was issued prison misconducts for both sexual harassment and indecent exposure based on the events of December 1, 2016. The prison employee provided a written statement in support of these charges (ECF No. 87-2 at 2), wherein she alleged substantially the same version of events as she had told the Court during the conference. Sloan provided a statement in response; he denied exposing his penis and masturbating during the call. (*See* ECF No. 89-2.) At the hearing on these misconducts, the hearing examiner heard testimony from the prison employee and defendants' counsel and received Sloan's statement. (*See* ECF No. 87-2 at 3.) The hearing examiner concluded that it was more likely than not that Sloan had exposed himself and sexually harassed the employee. (*See id.*) Thus, Sloan was found guilty on both misconducts. Sloan filed an opposition to defendants'

motion, wherein he denies the prison employee's allegations and claims he did not behave inappropriately during the conference call. (*See* ECF No. 89.)

## II. Legal Standard

"Both the Federal Rules of Civil Procedure and a court's inherent authority to control its docket empower a district court to dismiss a case as a sanction for failure to follow procedural rules or court orders." *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013) (citation omitted); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-31 (1962) (tracing and outlining courts' inherent authority to dismiss cases for lack of prosecution). The United States Court of Appeals for the Third Circuit has held that a district court should consider and balance the following factors in determining whether such a dismissal is appropriate:

> (1) the extent of the *party*'s personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). Not all of these factors need to weigh in favor of dismissal before dismissal is warranted, *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992), and "no single *Poulis* factor is dispositive." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003).

*Poulis* "[does] not provide a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation." *Mindek*, 964 F.2d at 1373. When considering imposing the harsh sanction of dismissal, courts—in close cases—should resolve doubts "in favor of reaching a decision on the merits." *Adams v. Trs. of N.J. Brewery Emps.'*

*Pension Trust Fund*, 29 F.3d 863, 878 (3d Cir. 1994) (quoting *Scarborough v. Eubanks*, 747 F.2d 871, 878 (3d Cir. 1984)). That is so because "[d]ismissal must be a sanction of last, not first, resort." *Poulis*, 747 F.2d at 869.

### III. Discussion & Analysis

Although *Poulis* ordinarily governs situations where the plaintiff has violated a procedural rule or a court's order—rather than situations involving flagrant and improper conduct—the Court finds that its analysis is applicable here as well. *See Gantt v. Maryland Division of Correction*, 894 F. Supp. 226, 229 (D. Md. 1995) (applying substantially similar factors in dismissing prisoner-plaintiff's case where he had sent letters to the court with threats, obscenities, and streaked them with excrement). The Court will thus analyze defendants' motion under *Poulis*.

The outcome of defendants' motion turns on whether the Court believes the prison employee. Ordinarily the Court would conduct an evidentiary hearing to gauge these sort of allegations, and had the Court not been on the call and heard the prison employee's statements—which were given on the record, albeit telephonically and unsworn—it would have scheduled an evidentiary hearing here. But the Court was on the call, and does not believe an evidentiary hearing is necessary based on the facts in the record and its presence on the call.

Sloan cursorily objects to defendants' reliance on the prison employee's statements and to the admissibility of the disciplinary records because they "are not sworn statements or unsworn statements made subject to the penalty of perjury," and because he was not given the chance to question the evidence in the disciplinary proceedings. (*See* ECF No. 89 at 5.) The Court rejects Sloan's objections. The prison employee's statements on the call were made minutes after she

witnessed the events that she discussed, and—based on the employee's tone of voice and her word choice—while she was still under the stress of excitement that the events caused. The Court therefore concludes that her statements on the call are not hearsay because they qualify under the excited-utterance exception of Federal Rule of Evidence 803(2). As for the disciplinary-hearing report wherein Sloan was found guilty of the misconducts arising from the December 1, 2016 events, the statements contained within that report are substantially the same as the Court's own conference memo (ECF No. 86) and the prison employee's statements on the call (*see* ECF No. 91). As for whether the report itself is hearsay, the Court concludes that it qualifies as a record of a regularly conducted activity. The Court therefore sees no evidentiary issue in relying on the prison employee's statements or on the disciplinary-hearing report in its analysis.

The Court credits the prison employee's statements and finds that it is more likely than not that Sloan did expose himself and masturbate in front of the prison employee during the December 1, 2016 pretrial conference call. The Court bases this finding on its own participation in the pretrial conference call, the prison employee's statements both during the conference call and in the disciplinary-hearing report, and that Sloan was charged and found guilty of misconducts as a result of his alleged conduct during the December 1, 2016 pretrial conference. Furthermore, the Court finds Sloan's version of events incredible.

As for Sloan's claim that he was not allowed to test the evidence in the disciplinary hearing, he was given the opportunity to question the allegations before this Court by way of his opposition brief. But his explanations and arguments are unpersuasive. Sloan alleges that the first call with defendants' counsel—before the Court got on the line—disconnected because the phone's battery was low. (ECF No. 89 at 1.) He alleges further that the prison employee then

returned to the room, reconnected the call, left the room again, and that prison guards entered the room some minutes later and directed him to end the call—and that he did not act inappropriately at any time during the call. (*See* ECF No. 89.) Yet Sloan's version of events does not account for defendants' counsel's statement to the Court, after the first call and once the Court got on the line, that someone in the background of the call had said Sloan was acting inappropriately and that the call was being ended for that reason. According to Sloan, the prison employee never said this or disconnected the first call. (*See id.*)

Thus, for Sloan's version of events to be true, not only must the prison employee be lying, but defendants' counsel must be lying as well. Indeed, that is what Sloan alleges. (*Id.* at 6 ("Attorney Friedline was able to privately communicate with prison officials and come up with a story of how Plaintiff committed some wrong-doing [sic]").) Although Sloan alleges that this conspiracy by defendants' counsel was concocted during the moments *after* he was escorted back to his cell, for Sloan's version to be true it must actually be that counsel planned this *prior* to the Court connecting to the first call. Otherwise, defendants' counsel's statement to the Court that someone had said Sloan was acting inappropriately would have served no purpose. And defendants' counsel must then have conspired with the prison employee to lie to the Court. Not only would this be a gross violation of the Pennsylvania Rules of Professional Conduct, but it is simply not credible.

The Court therefore credits the prison employee's allegations. It will apply the *Poulis* factors accordingly.

### A. *Poulis* Factors

The first *Poulis* factor is the extent of the party's personal responsibility. Sloan engaged in this behavior of his own volition and made the conscious choice to do so. The personal-responsibility factor therefore favors dismissal.

The second *Poulis* factor is the prejudice to defendants that resulted from Sloan's behavior. Sloan's conduct frustrated the pretrial conference, resulted in the cancelation of trial approximately a month before trial was to begin, and resulted in further delay in resolving this case. And as defendants point out, Sloan's behavior impeded their ability to effectively prepare for trial. Sloan's conduct and disruption of the pretrial conference thus substantially prejudiced defendants, and this factor therefore likewise favors dismissal.

The third *Poulis* factor is a history of dilatoriness. "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874 (citing *Poulis*, 747 F.2d at 868). Defendants argue that a history of dilatoriness on Sloan's part is met here, but this factor presents a closer call. It is true that this case has lingered, but most cases by prisoners who represent themselves do. The nature of such cases means that they often last longer than other cases; all filings are usually made and received by mail—which requires more time than the electronic filing and receipt of documents does—and researching and drafting legal documents in prison, by a litigant who typically has no experience in such matters, can take significantly more time than it would for counsel. Thus, some delays are to be expected.

But this case is atypical even compared to other prisoner cases. Although Sloan disputes his responsibility for these delays, the case has been held up at various times by his actions. (*See*

ECF Nos. 2 (order dismissing case because plaintiff failed to submit a certified copy of his prisoner-account statement), 28 (correspondence from the U.S. Marshals notifying the Court that Sloan never provided them with directions for service on certain defendants and that they therefore closed their file), 31 (motion for continuance by Sloan), 75-77 (granting Sloan a 21-day extension to file objections based on his motion for extension, though Sloan never filed any objections—meaning the extension was pointless), Text Order dated January 6, 2015 (denying Sloan's motion for restraining order against SCI Somerset based on "information that Plaintiff has been confined in a psychiatric unit at SCI-Pittsburgh and [refused] to come out of his cell to participate in this Court's scheduled telephone hearing").) Even if the Court gives Sloan the benefit of the doubt regarding his responsibility for these delays, the history-of-dilatoriness factor weighs moderately in favor of dismissal.

The fourth *Poulis* factor requires determining whether Sloan's conduct was willful or in bad faith. "Willfulness involves intentional or self-serving behavior." *Adams*, 29 F.3d at 875. Contumacious behavior, like "self-serving instances of flouting court authority and professional irresponsibility," can qualify as bad faith. *See id.* (citing cases). Here, the willfulness-or-bad-faith factor requires little analysis because it is difficult to conclude that Sloan's conduct was anything other than willful and in bad faith. He was in control of his actions and chose to expose himself and masturbate in front of a prison employee during a telephonic pretrial conference with this Court. His conduct was intentional (and presumably self-serving) and entirely inappropriate during a judicial proceeding that was being conducted in preparation for trial. The willful-or-in-bad-faith factor is therefore met and too weighs in favor of dismissal.

The fifth *Poulis* factor requires determining whether sanctions other than dismissal would be effective. "When a litigant is represented by counsel, the most 'direct and therefore preferable' sanction is to impose costs caused by the delay." *Woo v. Donahoe*, No. 12-cv-1265, 2013 WL 5636623, at *4 (E.D. Pa. Oct. 16, 2013) (quoting *Poulis*, 747 F.2d at 869). "In a pro se context, however, monetary sanctions may not be an effective alternative." *Id.* at *3 (internal quotations and citations omitted). That is so because "[p]ro se plaintiffs clearly lack attorneys on whom costs could be imposed under the Federal Rules of Civil Procedure, and such plaintiffs often lack the ability to pay monetary sanctions." *Id.* (citing *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008)). Thus, when a plaintiff represents himself and is proceeding in forma pauperis—like Sloan— "monetary sanctions would not be an effective alternative." *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002). Nor does it appear that other sanctions—like precluding Sloan from offering certain evidence at trial—would be an effective sanction to reprimand Sloan and guarantee that he would conduct himself appropriately at trial. Sloan's conduct demonstrates disrespect for the judicial process and—given that he was willing to do this on a pretrial conference call with counsel and the Court—convinces the Court that he is likely to engage in similar acts in the future and at trial. The Court therefore concludes that alternative sanctions other than dismissal would not be effective, meaning this factor likewise weighs in favor of dismissal.

The sixth and final *Poulis* factor examines whether the plaintiff's claim appears to be meritorious. A claim is meritorious if the allegations in the complaint would support recovery if they were established at trial. *Poulis*, 747 F.2d at 869-70 (citing cases). Here, this factor weighs against dismissal; Sloan's complaint theoretically states valid claims, and although some of his

claims have been dismissed, others have survived to the current stage of awaiting trial. Some of his claims thus appear to be meritorious, which weighs against dismissal.

**IV.     Conclusion**

Although *Poulis* "[does] not provide a magic formula whereby the decision to dismiss or not to dismiss a plaintiff's complaint becomes a mechanical calculation," *Mindek*, 964 F.2d at 1373, the Court concludes that—on balance—application of the *Poulis* factors here demonstrates that dismissal with prejudice is warranted. The Court has concluded that four of the six factors—Sloan's personal responsibility, the prejudice to defendants, Sloan's willfulness and bad faith, and the effectiveness of alternative sanctions—all weigh heavily in favor of dismissal. One factor—Sloan's history of dilatoriness—weighs somewhat in favor of dismissal. And only one factor—the meritoriousness of Sloan's claims—weighs against dismissal. While the Court recognizes that dismissal is a harsh sanction that should be used only in extreme cases, the Court holds that this case qualifies as such, and that dismissal is appropriate. Sloan's case will thus be dismissed with prejudice. A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| AARON SLOAN, | ) | Case No. 3:13-cv-104 |
|---|---|---|
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| DAVID PITKINS, et al., | ) | |
| Defendants. | ) | |

## ORDER

**NOW**, this 17th day of August 2017, upon consideration of defendants' motion to dismiss for failure to prosecute (ECF No. 87) and for the reasons in the memorandum opinion accompanying this order, it is **HEREBY ORDERED** that defendants' motion is **GRANTED**. This matter is dismissed with prejudice and the Clerk is directed to close this case.

BY THE COURT:

/s/ Kim R. Gibson

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE